## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

Case No. 20-10053-EFM

JOHN CANADA,

*Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant John Canada's Motion to Suppress (Doc. 15).  Canada seeks to suppress evidence stemming from an April 22, 2020, traffic stop.  The Court held a hearing on the motion on May 24, 2021.  For the following reasons, the Court denies the motion.

### I.    Factual and Procedural Background[1]

On April 22, 2020, Wichita Police Department Officers, Zachary Scott Jensen and Trevor Sanders, were patrolling near the intersection of 13th and Oliver in Wichita after dark.  Both officers were assigned to the department's Violent Crime Community Response Team and considered 13th and Oliver to be a high-crime area due to repeated robberies, homicides, and drug crimes near the intersection.  While traveling southbound on Oliver, Officer Jensen noticed that

---

[1] The Court makes the following factual findings from the evidence presented at the May 24, 2021, hearing for purposes of this Order only.

there was traffic traveling northbound on Oliver, but no traffic traveling southbound, so he completed a U-turn in order to follow the flow of traffic.  Shortly thereafter, the driver of a Dodge Magnum—later identified as John Canada—turned right from Oliver onto eastbound 13th.  Canada failed to activate his turn signal, and Officer Sanders initiated a traffic stop.

After Officer Sanders activated his overhead lights, Canada began braking, indicating to the officers that he was aware he was being pulled over.  Officer Jensen testified that Canada continued to slowly roll for an "abnormal amount of time" before finally coming to a stop.  Both officers noted that the roadway was free of debris or other obstructions that could have necessitated a slower stop time.  Officer Jensen testified that in his training and experience, "slow rolls" can often indicate that a driver, or a driver's passenger, is attempting to hide or retrieve something inside the vehicle.  Thus, the delay caught Officer Jensen's attention.

After Canada stopped his vehicle, Officers Sanders approached the driver's side of the vehicle while Officer Jensen walked up the passenger side.  As Officer Sanders approached the vehicle, he was unable to see Canada's body, but made eye contact with Canada via the driver's side mirror.  As Officer Jensen approached the vehicle, he noticed that Canada was looking to the left, but had his shoulders pinned up against the back of his seat with his hips lifted off the seat and was reaching his right arm behind his seat.  Officer Jensen immediately instructed Canada to put his hands up and instructed Officer Sanders to get him out of the vehicle.  Officer Jensen testified that he did so because he was concerned, based on Canada's actions, that there was a weapon in the vehicle.

After Canada exited and was escorted away from the vehicle by Officer Sanders, Officer Jensen conducted a protective sweep of the vehicle.  During the sweep, Officer Jensen located a .38 Special under the driver's seat.  The officers then detained Canada and requested a records

check.  After discovering that Canada was driving while his license was revoked, the officers placed Canada under arrest.  The officers then discovered that Canada was also a felon prohibited from possessing a firearm.  The officers gave Canada his *Miranda* warnings and questioned him about the firearm.

Now arguing that the protective sweep was unjustified and unconstitutional, Canada moves to suppress the physical evidence obtained in the search, as well as Canada's *Mirandized* statements made following the search.

## II.      Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."[2] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."[3]  If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[4] Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[5] The government bears the burden to prove that a warrantless search or seizure was justified.[6]

---

[2] U.S. CONST. amend. IV.

[3] *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted).

[4] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[5] *California v. Carney*, 471 U.S. 386, 390 (1985).

[6] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

### III.    Analysis

Canada asks the Court to suppress evidence collected during the April 22 traffic stop on the basis that Officer Jensen's protective sweep of his vehicle was unlawful.  Canada argues that the facts and circumstances of the stop did not give Jensen reasonable and articulable suspicion that Canada was dangerous and had immediate access to a weapon.

First, the Court concludes that Canada has standing to object to the search of the Dodge Magnum.  At the May 24 hearing, Canada presented testimony that he had purchased the vehicle from his cousin's partner—the registered owner of the Dodge—about two months before being pulled over.  Thus, Canada had a legitimate possessory interest and reasonable expectation of privacy in the Dodge Magnum.[7]

Next, the Court must determine whether an exception to the warrant requirement justifies Officer Jensen's warrantless search of Canada's vehicle.  In *Terry v. Ohio*,[8] the Supreme Court held that an officer may search a suspect for weapons if he reasonably believes he is dealing with an armed and dangerous individual.[9]  In *Michigan v. Long*,[10] the Court applied *Terry* to traffic stops.[11]  An officer may conduct a protective sweep of a vehicle if the officer reasonably believes that the suspect poses a danger and may gain immediate access to a weapon.[12]  The purpose of the protective sweep is officer safety and is "limited to those areas in which a weapon may be placed

---

[7] *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003).

[8] 392 U.S. 1 (1968).

[9] *Id.* at 27.

[10] 463 U.S. 1032 (1983).

[11] *Id.* at 1035 ("We hold that the protective search of the passenger compartment was reasonable under the principles articulated in Terry.").

[12] *United States v. Dennison*, 410 F.3d 1203, 1210 (10th Cir. 2005).

or hidden."[13]   The protective sweep may encompass any area that could contain a weapon and to which the suspect could later gain access.[14]

Notably, the protective sweep is not subject to the limits placed on a search incident to arrest as a protective sweep usually occurs before a suspect is arrested.   "In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is complete."[15]   Therefore, unlike a search incident to arrest, a protective sweep of a vehicle may be conducted even when the suspect is not in reaching-distance of the area at the time of the search.[16]   "The goal of a protective sweep is, in part, to secure a vehicle so that when the defendant is *returned to the vehicle* he is not likely to injure the officers."[17]

The Court concludes that the protective sweep exception applies.   When the officers first attempted to pull Canada over, Canada took an abnormal amount of time to stop his vehicle, despite a clear roadway with no obstructions.   The officers testified that in their training and experience, a slow stop can indicate that the driver is attempting to retrieve or conceal a weapon or other contraband.   Then, upon the officers' approach of the vehicle, Office Jensen observed that Canada had his shoulders pinned up against the back of his seat with his hips lifted off the seat and was reaching his right arm behind his seat.   Officer Jensen immediately became concerned that Canada was attempting to conceal or reach for a weapon.   The Court concludes that Canada's slow stop

---

[13] *Long*, 463 U.S. at 1049.

[14] *United States v. Palmer*, 360 F.3d 1243, 1248 (10th Cir. 2004).

[15] *Arizona v. Gant*, 556 U.S. 332, 352 (2009) (Scalia, J., concurring).

[16] *Id.* ("The rule of *Michigan v. Long* is not at issue here.").

[17] *United States v. Chambers*, 383 F. App'x 719, 722 (10th Cir. 2010).

combined with his furtive gesture to the area beneath his seat as the officers approached gave rise to the reasonable, articulable suspicion that Canada had access to weapon and may have posed a danger to the officers.

Although Canada argues that Officer Jensen's inferences based on his training and experience are akin to speculation based on lack of knowledge, the Court disagrees.  In *United States v. Bagley*,[18] cited by Canada, the Tenth Circuit held that "lack of knowledge cannot constitute the specific, articulable facts" necessary to justify a protective sweep.[19]  In *Bagley*, however, deputy marshals obtained a search warrant allowing entry into a home to locate and arrest a suspect.[20]  After arresting the suspect, the deputy marshals conducted a protect sweep of the entire home.[21]  The government argued that the deputy marshals "had no way of knowing, one way or another, whether anyone beside [the suspect] was still in the house," thus posing a danger that they "might have been subjected to an attack if someone else had remained inside" the house.[22]  The court rejected this argument holding that lack of information does not establish the specific, articulable facts necessary for a protective sweep of a home.[23]  A post-arrest search of an entire home based on officers' lack of knowledge is wholly unlike Officer Jensen's narrow search of the area in the vehicle where Canada had been reaching, and which Canada would again have access to at the conclusion of the stop.

---

[18] 877 F.3d 1151 (10th Cir. 2017).

[19] *Id.* at 1153.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1156.

[23] *Id.*

Further, multiple courts have concluded that a protective sweep was lawful in similar circumstances.[24]  Because Officer Jensen had a reasonable, articulable suspicion that Canada had access to a weapon, the Court concludes that his limited sweep of the vehicle was justified.[25]  As such, the Court will not suppress the evidence of the firearm located under the driver's seat. Moreover, because the search of the vehicle was lawful, Canada's argument that his post-*Miranda* statements should be suppressed as fruit of the unlawful search must fail.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 15) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 4th day of June, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (defendant's "furtive gestures under his seat as the officers approached the vehicle gave them reason to believe that there was a weapon in the vehicle"); *United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007) (reasonable suspicion existed where an officer saw a driver "dip with his right shoulder toward the floor as if he was placing something under his seat" as the officer approached the vehicle); *United States v. Thompson*, 2016 WL 845337, *3 (W.D. Ky. 2016) (protective sweep of vehicle permissible after officers approaching vehicle saw driver "apparently trying to hide something under the seat").

[25] *Long*, 463 U.S. at 1049.

-7-